Curia, per Dunkin, Ch.
It is proposed first to consider the claim of the complainants, in relation to the slave Parker. He was one of the eighteen negroes bequeathed to Mrs. Martin for life, with remainder to the surviving children of Mrs. Gunnels. During the life time of Mrs. Martin, she had given up Parker to W. C. Gunnels, and he was sold by the defendant, Leak, as the agent of W. C. Gunnels, for $1000. The defendant, George ,M. Gunnels, is the administrator of W. 0. Gunnels, and he, with the other parties to these proceedings, are his distributees.
The complainants insist that the administrator of Wm. 0. Gunnels must account to them for their share of the sale of Parker, under the will of George Martin.
Wfii? O, Gunnels died in December, 1844, and the bill was *267 filed on the 7th May, 1845. • The defendant, in his answer, objects that the bill was prematurely filed, and prays the same ben-fit of the defence as if it were specially pleaded.
Nothing is better settled than that “ if a plea is coupled with an answer to any part of the bill covered by the plea, and which by the plea, the defendant consequently declines to answer, the plea will, upon argument, be overruled. The reason of this doctrine is, that pleas are to be put in ante, litem contestatem; because they are pleas only, why the defendant should not answer, and therefore, if he does answer to any thing to which he may plead, he overrules his plea, for the plea is only why he should not answer ; and if he answers, he waives the objection, and of course his plea.” Mitf. 299; Story, § 688.
The defendant has answered fully to every part of the bill. If his dilatory plea had been formally spread on the record, it would have been overruled by the answer. His condition is not improved by the fact, that what should have been the subject matter of a distinct plea, has been incorporated into the answer*
But the defendant also relies on the statute of limitations. Mrs. Charity Martin, the life tenant, died in 1840, and the com-1 plainants’ rights, whatever, they were, then accrued. On the 10th December of that year, partition was made among the children of Mrs. Gunnels, of all the negroes held by Mrs. Martin for life, except Parker, who had been previously sold by direction of W. C. Gunnels. The death of W. C. Gunnels occurred on the 17th or 18th December, 1844. It is urged on the part-of the complainants, that the plea of the statute is inapplicable, because Mrs. Martin was a trustee, and W. C. Gunnels sold Parker with a knowledge of the trust, and is affected with it. The principle is well established by the authorities, and indeed was not questioned at the argument, that to cases of express or declared trusts, the statute is inapplicable ; but that implied trusts constitute no exception. See Fisher vs. Tucker, 1 McC. Ch. 176; Miller vs. Mitchell, Bail. Eq. 437. In Cook vs. Fountain, 3 Swanst. 585, Lord Nottingham remarks that “ express trusts are those which are raised and created by the act of the parties, and implied trusts are those raised or created by act or construction of law; express trusts are declared either by word or writing ; and these declarations appear either by direct and manifest proof, or violent and necessary presumption. These last are commonly called presumptive trusts ; and that is, when the court, upon consideration of all the circumstances, presumes there was a declaration, either by word or writing, though the *268 plain and direct proof thereof be not extant.” “ There is,” says he, “ one good, general, and infallible rule, that goes to both these kinds of trusts. It is such a general rule as never deceives ; a general rule to which there is no exception; and that is this : the law never implies, the court never presumes a trust, but in case of absolute necessity. The reason of this rule is sacred ; for, if the chancery do once take liberty to construe a trust by implication of law, or to presume a trust unnecessarily, a way is opened to the Lord Chancellor to construe or presume any man in England o'ut of his estate; and so, at last, every case in court will become casus pro amico
In several cases it has been held, and may now be considered as settled, that the tenant for life stands in the nature of a trustee to the remainderman. It is only necessary to inquire whether this is a direct declared trust, or only a trust by implication of law. The simplest form of implied trust is put by Mr. Justice Story, as where property or money is delivered by A to B, for the use of C, or to be delivered to C. Although this might be regarded rather as a bailment for which an action at law would lie, yet, says he, it has been held on very high authority, that this is a trust, necessarily implied from the nature of the transaction, and which chancery will enforce in favor of the beneficiary, although no express agreement has been entered into to •that effect. 2 Story Eq. § 1041, 1196. The guardian of an infant is an express trustee, whose duties as such, are declared in the condition of his bond. But a man who enters on the lands of an infant, and receives the profits of his estate, is also a trustee, and accountable as such. But this latter is an implied trust, and when the infant, four years after he becomes of age, brings a bill for an account, the statute of limitations is as much-a bar to the suit, as it would be to an action at common lfiw ; and so it was ruled by the Lord Chancellor in Lockey vs. Lockey, Prec. in Chanc. 518, one of the cases cited with approbation by Chancellor Waties in Fisher vs. Tucker.
An executor is a trustee. He holds on an express or declared trust, and as between him and the cestui que trusty the statute is inapplicable. Not so of a purchaser from an executor. He also is, to certain intents, a trustee, but this is an implied or constructive trust. This was the case of Beckford vs. Wade, 17 Ves. 95. “ It is certainly true,” says Lord Eldon, “that no time bars a direct trust, as between cestui que trust and trustee ; but if it is meant to be asserted, that a court of equity allows a man to make out a case of constructive trust at any distance of time, *269 I am not aware that there is any ground for a doctrine so fatal to the security of property, as that would be.” Bonney vs. Ridgard, 1 Cox Cas. in Eq. 145, was also the case of a purchase from an executor, in which Lord Kenyon, master of the Rolls, held the purchaser to be a trustee, but that the demand was barred by the statute. The distinction between actual trusts, and trusts by implication, in reference to the operation of the statute of limitations, is explained by Lord Commissioner Ashhurst in Townsend vs. Townsend, 1 Bro. C. C. 550. He says, “as to trusts being an exception t'o the statute of limitations, the rule holds only as between trustees and cestui que trusts. It is true that a trustee cannot set it up against his cestui que trust, but this is merely the case of a trustee by implication, and as such, affected by an equity; but that equity must be pursued within some reasonable time.”
The doctrine thus fully established, may be illustrated by the case under adjudication. The executor of George Martin is a direct trustee, to whom the statute affords no protection. But the tenant for life is a constructive or implied trustee. There is no “ direct and manifest proof of a mist declared either by words or in writing.” There are “ no circumstances creating a violent and necessary presumption” that such declaration was made, “ though the direct and plain proof thereof be not extant.” This is necessary to constitute an express trust. But he is like the purchaser from an .executor. He is affected by an equity. That equity must be pursued within a reasonable time, and the court adopts the statute of limitations as a convenient rule of restriction. W. G. Gunnels can be in no worse situation than the tenant for life, by whose permission he sold the negro. On the death of Mrs. Martin in 1840, the right accrued, and was barred by the statute, prior to the death of W. 0. Gunnels, in December, 1844.
The court concur entirely with the Chancellor, that this was not a case for injunction ; that the evidence showed no ground of reasonable distrust or apprehension on the part of the complainants, or any fact which would warrant a suspicion of the integrity of the defendants, persons proved to be, in the language of the decree, “all respectable and entirely trust-worthy.” The principle on which the court proceeds, is stated in Smith vs. Daniel, 2 McC. Ch. 150, and in the recently decided case of Ramsay vs. Joyce, McM. Eq. 253. Not being a matter of right, we think the injunction should not have been ordered. The enjoyment of the *270 life estate should not be unnecessarily disturbed. Unless there is proof of danger, the remainderman is entitled only to an inventory of the property; 1 Story Eq. § 604 ; and in all such cases, as in bills to perpetuate testimony, of discovery merely, and the like, the proceeding must be at the costs of the complainants.
It is ordered and decreed, that so much of the decree of the circuit court as directs the administrator of W. C. Gunnels to account for the sale of the slave Parker, and so much' as awards an injunction against the defendants, be reversed. It is further ordered, that the costs of Mrs. Temperance Gunnels be paid by the complainants. In all other respects the decree is affirmed.
JohnstoN Ch. concurred.